IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 24, 2012

**RONKEIVIUS WILLIAMSON v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court of Davidson County**
**No. 2007-D-2763     J. Randall Wyatt, Jr., Judge**

**No. M2011-00951-CCA-R3-PC - Filed February 28, 2012**

Ronkeivius Williamson ("the Petitioner") filed for post-conviction relief from his conviction of second degree murder, and the resulting sentence of twenty-five years, on the grounds that he received ineffective assistance of counsel in conjunction with his guilty plea. After an evidentiary hearing, the post-conviction court denied relief, and this appeal followed. Upon our careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Caesar Cirigliano, Nashville, Tennessee, for the appellant, Ronkeivius Williamson.

Robert E. Cooper, Jr., Attorney General & Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Victor S. Johnson III, District Attorney General; Kathy Morante, Assistant District Attorney General; for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

The Petitioner was indicted in October 2007 for first degree premeditated murder. The Petitioner was fourteen years old at the time. In September 2009, the Petitioner pled guilty to second degree murder with an agreed-to sentence of twenty-five years at one hundred percent service. At the plea hearing, the prosecutor stated the following:

If this case had gone to trial, the State would have established that on May 10th of 2007, Chauncey Shelton, his stepfather, James Hunter, and his cousin, Keith Shelton, stopped in Nashville at 225 Courtland Street to visit some relatives. They were on their way home to Michigan. Chauncey Shelton was twenty-two years old at that time. He had been a student at Martin Methodist College. He was a star basketball player. And he was a completely innocent victim in this case. While at the house, a bunch of girls, including Kia Armstrong, who is [the co-defendant] Vivian Armstrong's daughter, got into a fight. It was a major fight, not just an argument, fighting, jumping on one another, that sort of thing. Chauncey Shelton saw this and he went to break up that fight. Standing there was [co-defendant] Vivian Armstrong next to [the Petitioner]. Vivian Armstrong lifted up her shirt, took out a loaded gun, handed it to [the Petitioner]. [The Petitioner] at the time was just fourteen years old. She gave him that gun and she said, get at him, which [the Petitioner] took to mean, kill him. And he did just that. He shot and killed Chauncey Shelton.

In February 2010, the Petitioner filed for post-conviction relief, claiming that he received ineffective assistance of counsel and that, as a result, his plea was not entered into knowingly and voluntarily.

At the post-conviction hearing, the Petitioner testified that he had wanted to go to trial but that his lawyer ("Trial Counsel") had frightened him into taking the plea bargain. According to the Petitioner, Trial Counsel "insisted" that he take a plea and "believed" he would be convicted at trial and sentenced to fifty-one years.[1] He also complained that Trial Counsel did not meet with him a sufficient number of times; did not explain things to him adequately; and did not conduct an adequate investigation. As to the plea agreement itself, he stated that he did not know that he would have to serve the full twenty-five years until right before he came to court and entered his plea. The Petitioner also testified that, when he signed the plea documents, he told Trial Counsel "this [isn't] what I really want, I want to go to trial," and that Trial Counsel told him, "well, you've already signed it, you might as well go on and take it." The Petitioner testified that he wanted post-conviction relief because he wished he had never taken the plea, he wished he had gone to trial, and he felt he would have had "a better chance at trial than [he] had taking the plea."

Trial Counsel testified that he represented the Petitioner for approximately two years during the course of his case. He stated that he discussed each witness with the Petitioner

_____

[1] In his amended petition for post-conviction relief, the Petitioner alleged that Trial Counsel told him "he was guaranteed to lose if he went to trial."

and that they discussed various defense strategies. Trial Counsel advised the Petitioner about the various degrees of homicide and the ranges of punishment for each. He explained that any sentence for a first or second degree murder conviction would have to be served at one hundred percent. He met with the Petitioner several times, sent the Petitioner several letters setting forth his analysis of the case, and met with the Petitioner's family. He provided both the Petitioner and the Petitioner's family with discovery. He took extra time with the Petitioner because of his young age. He obtained the services of an investigation firm. He provided the information he obtained from the investigation firm to the Petitioner. He provided the Petitioner with a written chart setting forth the various potential witnesses and their statements. He was prepared and ready to go to trial if necessary.

Trial Counsel acknowledged that the Petitioner was initially adamant about going to trial. He testified:

> One of [the] things with [the Petitioner] that . . . always tugged at me, at the time, he was like fourteen or fifteen. . . . And it – you know, to have somebody facing a first degree murder at that age really kind of weighed on me. And I wanted to make sure that we did not rush into a trial situation without that being exactly what he wanted to do. And so I did a lot of investigation. I prepared the case, tried it in my mind several times. But in the end, through discussions and also issues with the co-defendant, we decided and he decided that it was best to go ahead and take a plea.

Trial Counsel added,

> I never told him that he was guaranteed to lose the trial. But I was upfront with him. I've tried a lot of murder cases, tried a lot of – tried a lot of cases, numerous being in this Court. And nothing is guaranteed. But I wanted him to know how serious it was, that this is not just a case where we could just walk in and it's a coin toss over whether he's going to get life in prison. So, you know, in a very serious way, I did let him know, you could be getting fifty-one years on this. And, you know, I spoke with him a lot about that, because I was very concerned that he may make a decision that he would later regret. But we did also talk about the pluses of going to trial and maybe being able to get something lower.

Trial Counsel also explained that the Petitioner's co-defendant had initially said that she was going to trial, but later indicated that she might become cooperative with the prosecution in order to get a plea bargain. According to Trial Counsel, "that was really kind of the turning

point once [the Petitioner] realized that there was a great chance that she'd testify against him."

In addition to the testimony, copies of letters that Trial Counsel had sent the Petitioner and a transcript of the Petitioner's guilty plea were admitted into evidence as exhibits.

The post-conviction court subsequently issued its written decision denying post-conviction relief. The court specifically accredited Trial Counsel's testimony and made the following findings: (1) Trial Counsel did not force the Petitioner to enter a guilty plea "by creating fear in him of the consequences of going to trial." Rather, Trial Counsel "was addressing the difficult circumstances of the Petitioner's case and the possible outcome if they were not successful at trial." (2) Trial Counsel met with the Petitioner a sufficient number of times to fully review and prepare for trial. (3) Trial Counsel "thoroughly investigated the case." (4) Trial Counsel did not tell the Petitioner that he "was guaranteed to lose if he went to trial." Rather, Trial Counsel informed the Petitioner "of the strengths and weaknesses of their case and the possible outcomes of going to trial." (5) In sum, the proof demonstrated that Trial Counsel "was working both diligently and competently in his investigations and his preparations for the Petitioner's trial." Because the Petitioner failed to prove either deficient performance or any prejudice resulting from any alleged deficiency, the post-conviction court concluded, the Petitioner was not entitled to post-conviction relief.

## Analysis

### Standard of Review

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

*Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[2]  Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases."  Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act.  See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs:  (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.  See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).  The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel.  Goad, 938 S.W.2d at 370.  Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong.  Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'"  Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)).  Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance.  It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence.  Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)).  When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

---

[2] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution.  See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). In the context of a guilty plea, our analysis of this prong

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985). See also Calvert v. State, 342 S.W.3d 477, 486 (Tenn. 2011).

We have reviewed carefully the transcript of the post-conviction hearing, including the letters written by Trial Counsel to the Petitioner and the transcript of the guilty plea. The evidence fully supports the post-conviction court's findings and conclusions. The Petitioner has failed utterly to establish by clear and convincing evidence that Trial Counsel performed deficiently in any regard or that the Petitioner was in any way prejudiced by Trial Counsel's representation. The Petitioner's guilty plea was entered with the advice of competent counsel and after a proper hearing by the trial court. The Petitioner has failed to establish that Trial Counsel's performance rendered his guilty plea constitutionally infirm. Rather, it is clear that this is a case of "buyer's remorse," setting in after the Petitioner began serving his agreed-to sentence. See Robert L. Freeman v. State, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002). Accordingly, we hold that the Petitioner is not entitled to post-conviction relief.

## Conclusion

For the foregoing reasons, the Petitioner has failed to establish that he is entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE